# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-cv-00189

| KAISERKANE, INC. | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM OF DECISION, ORDER, AND DECLARATION** |
| NORTH AMERICAN ROOFING SERVICES, INC. | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the summary judgment motions filed by both the Defendant North American Roofing Services, Inc. ("NARS") [Doc. 20] and the Plaintiff KaiserKane, Inc. [Doc. 22].

## BACKGROUND

The following facts are not in dispute. KaiserKane is a general contractor that provides construction management and design/build construction services for a diverse range of projects. In 2007 or 2008, KaiserKane was selected by the federal Bureau of Prisons (BOP) to serve as the general contractor for a project to replace the rooves on three buildings at the Federal Correctional Institution Fort Dix (FCI Fort Dix), located in Burlington County, New Jersey. After being selected by the BOP

as the general contractor for the FCI Fort Dix project, KaiserKane entered into a subcontract agreement with NARS dated September 16, 2007. In addition to the roof replacement work, the FCI Fort Dix project also involved the removal of asbestos materials. The asbestos removal and abatement work was performed by Briggs Contracting Services, Inc. ("Briggs") pursuant to a separate agreement between NARS and Briggs. The work at the FCI Fort Dix project lasted approximately thirteen months and was completed in October 2009.

In 2010, Hitham Abuhouran filed a federal lawsuit against KaiserKane, NARS, Briggs, and others in the Middle District of Pennsylvania. Mr. Abuhouran alleged that he was a prisoner at FCI Fort Dix during the relevant reroofing period and that KaiserKane, NARS, and Briggs were negligent in the removal and abatement of asbestos as a part of that project. Thereafter, the Middle District of Pennsylvania transferred the Abuhouran litigation to the District of New Jersey under 28 U.S.C. § 1404.

On September 12, 2012, the U.S. District Court for the District of New Jersey dismissed the Abuhouran federal court litigation without prejudice under Federal Rule of Civil Procedure 12(b)(7) for failure to join an

2

indispensable party.[1]  Mr. Abuhouran then re-filed his lawsuit against KaiserKane, NARS, Briggs, and other defendants in New Jersey state court. KaiserKane, NARS, Briggs, and the other named defendants answered the state court complaint of Mr. Abuhouran, denied Mr. Abuhouran's allegations against them, and asserted cross-claims against one another.  KaiserKane's cross-claims in the Abuhouran state court litigation alleged that: (a) NARS owed it contractual indemnity under the Parties' Subcontract Agreement; and (b) KaiserKane was a third-party beneficiary of any contractual claim for indemnity that NARS may have against Briggs under their agreement.

During the Abuhouran state court litigation, NARS filed and served a motion for summary judgment seeking dismissal of the plaintiff's claims.  Mr. Abuhouran did not timely respond to NARS's motion for summary judgment. On August 22, 2014, the New Jersey state court granted the motion, dismissed Mr. Abuhouran's action with prejudice, and dismissed the cross-claims that KaiserKane and the other defendants had brought against one another.  Subsequently, Mr. Abuhouran filed a motion to reinstate his claims

---

[1] Mr. Abuhouran's original complaint included as a defendant, Briggs, a New Jersey corporation.  Since Mr. Abuhouran was also a citizen of New Jersey, he "dropped" Briggs from his federal suit by way of an amended complaint so as to preserve diversity.  The District Court, however, found Briggs to be an indispensable party and dismissed the action without prejudice. Abuhouran v. KaiserKane, Inc., et al., No. 1:10-cv-6609-NLH-KMW, Doc. No. 95 (D.N.J. Sept. 12, 2012).

and alleged in an affidavit that he had changed his residence, did not receive timely notice of NARS's motion for summary judgment and, therefore, did not have an opportunity to file a timely response. The New Jersey state court granted Mr. Abuhouran's motion and reinstated his claims. Shortly thereafter, KaiserKane moved to have its cross-claims reinstated so they could be litigated as a part of the pending Abuhouran state court litigation, but the New Jersey state court denied that motion and refused to allow KaiserKane to reinstate its cross-claims.

KaiserKane then brought this diversity action here. KaiserKane's Complaint includes three causes of action: Count I – breach of contract; Count II – specific performance; and Count III – declaratory judgment. In short, KaiserKane requests damages, a declaration regarding the parties' rights under the indemnification portions of their contract, an affirmative injunction requiring NARS to comply with its purported contractual obligations to defend and indemnify KaiserKane, and costs.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." N&O Pub. Co. v. RDU Airport Auth., 597

F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue exists. Id.

The parties have submitted cross-motions for summary judgment under Federal Rule of Civil Procedure 56, wherein each side contends that there are no factual issues for trial and that judgment may be rendered as a matter of law on all claims based upon the record. When the parties each move for summary judgment on the same claim, the Court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). In considering each of the motions for summary judgment, the Court must view

5

the pleadings and materials presented in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor as well. Adams v. UNC Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

Upon review of the record before the Court, the Court notes, and the parties agree, that this action involves the construction of the parties' contract, a pure question of law for the Court to resolve. Accordingly, no genuine dispute as to any material fact presently exists. Therefore, summary judgment is an appropriate means by which to resolve the issues presented by the parties that are currently ripe for determination.

## **DISCUSSION**

KaiserKane contends that the contract it executed with NARS obligates NARS to do two things: defend KaiserKane from all claims made by Mr. Abuhouran in his New Jersey state court action and indemnify KaiserKane for any loss suffered as a result of these claims. The resolution of these two issues depends upon the construction of the parties' contract.

**I.      Duty to Defend**

KaiserKane asserts that the parties' contract expressly required NARS to provide insurance, defend, indemnify and hold KaiserKane harmless (including attorneys' fees) for any claims brought against it arising out of the negligence of NARS or its agents. [Doc. 23 at 11]. The provisions upon

which KaiserKane relies are found in Article 5 of the contract entitled "Insurance and Indemnity." [Doc. 23-1 at 4]. The operative language states that NARS "agrees to indemnify and hold harmless" KaiserKane from certain events. [Id. at 5]. Article 5, however, is silent as to an obligation to defend. The pertinent contract language only required NARS to obtain comprehensive general liability (CGL) coverage and to name KaiserKane as an additional insured. [Id. at 5, §5.1]. Nowhere, however, does the contract ***expressly*** require NARS to ***defend*** KaiserKane as a named defendant in any third party lawsuit as KaiserKane contends.

A duty to defend is an entirely separate obligation from a duty to insure. Cf. Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 277 N.C. 216, 176 S.E.2d 751 (1970) (the duty of an insurer to defend its insured is based on the coverage contracted for in the insurance policy). In arguing that NARS owes it a duty to defend when the contract contains no such language, KaiserKane is asking the Court to provide it a basis for relief the parties omitted from their agreement. The process of construing a contract does not include adding unexpressed terms. The parties' contract contains no duty requiring NARS to defend KaiserKane against the claims made by Mr. Abuhouran in his New Jersey suit and the Court will not amend the agreement under the guise of construction to so provide.

This, of course, does not prevent KaiserKane from pursuing a claim against NARS that it breached the contract by failing to obtain insurance coverage for KaiserKane as required by the contract.[2] Such claim, however, would not become ripe for determination until the New Jersey state case brought by Mr. Abuhouran is resolved. Accordingly, KaiserKane's claim for breach of contract will be stayed by the Court until the conclusion of Mr. Abuhouran underlying New Jersey state court action.

II. **Right to Indemnity**

   A. **NARS' Contractual Defenses**

In the face of KaiserKane's claim for indemnification, NARS responds by asserting that the parties' contract "carves out" any liability on the part of NARS (or its agents or subcontractors) for asbestos-related third party claims. Further, because Mr. Abuhouran's state court action is premised upon tortious exposure to asbestos, NARS asserts such "carve out" provisions of the contract obviate any duty on its part to indemnify or insure KaiserKane. [Doc. 27 at 5]. NARS points to three provisions of the contract it asserts supports its argument:

---

[2] Likewise, nothing in the contract prevents NARS from providing a defense to KaiserKane in the New Jersey litigation in order to limit its ultimate exposure.

> [1] Contractor [NARS] has no liability for certain conditions in the existing building including but not limited to … insulation …
>
> [2] Contractor [NARS] shall have no liability whatsoever for ... any incidental or consequential damages resulting from the Contract Work, including all additions thereto …
>
> [3] Contractor [NARS] is not responsible for any environmental assessment or abatement including but not limited to the identification, and removal of asbestos … occurring either prior or subsequent to the Contract Work[.]

[Doc. 23-8 at 4, ¶ B]. In short, NARS contends the contract absolves it from any liability relating to asbestos encountered at the FCI Fort Dix project site. NARS' contention, however, is unsupported by the contract language.

The provisions of the contract upon which NARS relies originate from the contract's "Exhibit A" which describes the work to be performed by NARS (i.e., the "Contract Work"). [Doc. 23-8]. Broadly speaking, NARS contracted to remove the existing roofs of three buildings, including the ballast, debris, and insulation, and thereafter install on top of each building the specific materials set forth in Exhibit A. [Id. at 2]. The "Contract Work" specifically included the removal of "ACM [asbestos containing materials] wall and curb flashings per state and local asbestos procedures."[3] [Id.]. Asbestos abatement was clearly a part of what NARS contracted to perform.

---

[3] In addition, the contract specified that if the "flashings are considered friable and/or it is

The provisions on which NARS relies to argue that it is shielded from liability do not absolve it from performing in accordance with the contract. The first provision NARS cites to states that it had "no liability for certain conditions in the existing building including but not limited to … insulation[.]" Just because NARS had no liability for the condition of any insulation before beginning its job does not excuse it from its contractual responsibility for removing such insulation in performance of the contract. Moreover, NARS agreed to remove any such insulation using a method of removal in compliance with state and local asbestos procedures. This obligation was an explicit component of its "Contract Work." NARS cannot maintain that it was both contractually obligated to perform certain work but, at the same time, not amenable to claims for performing its work improperly.

Second, seizing on language KaiserKane inartfully included in its brief – that any damages sustained by KaiserKane resulting from the <u>Abuhouran</u> litigation were "consequential" – NARS seeks to avoid liability by relying on contractual terms absolving it of "consequential damages resulting from the Contract Work[.]" NARS, however, contracted to indemnify KaiserKane for certain losses. If those losses are incurred, the liability for indemnity is a

---

determined the field membrane contains asbestos, an additional price increase for abatement will be required." [<u>Id.</u> at 3].

form of damages arising *directly* from the contract responsibilities. As such, a claim for contractual indemnity is a claim for direct damages, not consequential damages.

Finally, NARS fares no better relying on the third contract provision it cites. NARS asserts that it "is not responsible for any environmental assessment or abatement including but not limited to the identification, and removal of asbestos … *occurring either prior or subsequent to the Contract Work*[.]" It is true that NARS had no asbestos-related responsibilities either prior or subsequent to its "Contract Work." Its alleged liability in the present case arises, if at all, from its *performance of* the "Contract Work," not before or after. [Doc. 26-1 at 5-10].

For all of these reasons, NARS' defenses to KaiserKane's claim of indemnity based on these three contractual provisions do not bar KaiserKane's claim, and KaiserKane's motion for summary judgement as to these defenses will be granted.

### B. Plaintiff's Claim of Right to Indemnification

KaiserKane has also moved for summary judgment on its claim that it is entitled to indemnity if it is held liable to Mr. Abuhouran. [Doc. 23 at 7]. KaiserKane argues that this question is resolved by Section 5.2 of the contract, which reads in pertinent part:

>To the fullest extent permitted by law, [NARS] agrees to indemnify and hold harmless, [KaiserKane] . . . and all of their agents and employees from and against claims, damages, loses [sic], and expenses, including, but not limited to, attorneys' fees arising out of or resulting from the performance or failure in performance of [NARS'] work under this Agreement provided that any *such claim*, damage, loss, or expenses (1) *is attributable* to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom (2) *is caused*, in whole or in part, by any negligent act or omission of [NARS] or anyone directly or indirectly employed by [NARS], or anyone for whose acts [NARS] may be liable, regardless of whether raised in part by a party identified hereunder.

[Doc. 23-1 at 5, §5.2 (emphasis added)].

By the plain language of the contract, NARS agreed to indemnify KaiserKane and hold it harmless for any claims or losses arising out of the performance of NARS' work. This broad right to indemnification enjoyed by KaiserKane, however, was subject to express conditions. KaiserKane would be entitled to indemnity only if the person seeking redress was bringing (1) a "claim" which (2) "is attributable" to bodily harm and which (3) "is caused" in whole or in part by any negligent act or omission of NARS or its agents.

Mr. Abuhouran has brought a civil action seeking money damages. Such is clearly a "claim" against KaiserKane, as contemplated by the contract's indemnification section. In his civil action, Mr. Abuhouran alleges that he was injured as a result of the actions of KaiserKane and others. Such

12

claim, if anything, "is attributable" to an injury to his person. Mr. Abuhouran next asserts the injury encompassed within his claim "is caused" in whole or in part by the negligent acts or omissions of KaiserKane, NARS, and Briggs. Lastly, Mr. Abuhouran alleges that NARS and its subcontractor, Briggs, were negligent in causing his injury. As such, he asserts his claim against "anyone directly or indirectly employed by [NARS], or anyone for whose acts [NARS] may be liable[.]" [Doc. 23-1 at 5, §5.2]. For these reasons, Mr. Abuhouran's civil action fits squarely within the express terms of the indemnity provision.

Despite the plain language of § 5.2, NARS contends that the indemnification section demands greater proof. According to NARS, "[w]hen juxtaposed to other indemnity provisions in the contract, language in the provision at issue requires proof beyond mere allegation." [Doc. 25 at 9 (emphasis in original)]. Because § 5.2 repeatedly uses the word "is" following the word "claim," NARS asserts that a showing of bodily injury and causation must "take place in the world of fact." [Id. at 11]. While creative, NARS offers no authority to support its argument. KaiserKane, on the other hand, cites to two persuasive opinions that reject NARS' proffered interpretation of the parties' indemnity section that injury and causation must be proven and not simply alleged. Maule v. Philadelphia Media Holdings, LLC, No. 08-3357, 2010 WL 914926 (E.D. Pa. 2010); Siebe, Inc. v. Louis M. Gerson Co.,

Inc., 74 Mass. App. Ct. 544, 908 N.E.2d 819 (2009). The Court agrees with the rationale of both Maule and Siebe. Moreover, the plain meaning of the contractual phrase "the claim … is" describes what is asserted and must be asserted to state a claim, not what is proven and must be proven to establish liability.

For these reasons, the Court concludes as a matter of law that Mr. Abuhouran's civil action against KaiserKane is a claim that falls within the purview of the indemnity provision, § 5.2, of the contract.

### C. Survivability of any Right to Indemnity under N.C. Gen. Stat. § 22B-1

The North Carolina legislature, in adopting N.C. Gen. Stat. § 22B-1, has determined that it is against the public policy of the state for a construction contractor to attempt to indemnify itself from its own negligence by means of any contractual undertaking. St. Paul Fire & Marine Ins. v. Hanover Ins., 187 F.Supp.2d 584, 590 n.7 (E.D.N.C. 2010) (under North Carolina law, a general contractor cannot require a subcontractor to insure it against its own negligent acts); Penn. Nat. Mut. Cas. Ins. Co. v. Assoc. Scaffolders & Equip. Co., 157 N.C. App. 555, 559, 579 S.E.2d 404, 407 (2003) (same). Nevertheless, "a construction indemnity agreement may purport to indemnify a promisee from damages arising from negligence of

14

the promisor" so long as the indemnification clause does not attempt to shield the promisee from its own negligence. Bridgestone/Firestone, Inc. v. Ogden Plant Maint. Co., 144 N.C. App. 503, 506, 548 S.E.2d 807, 810 (2001), aff'd, 355 N.C. 274, 559 S.E.2d 786 (2002).

The pro se complaint filed by Mr. Abuhouran in his New Jersey action seeks relief based upon the alleged negligent acts and omissions of KaiserKane, NARS, and Briggs. His allegations are unclear, however, as to whether he asserts that KaiserKane is directly liable for its own negligence, or derivatively liable for the negligence of NARS and/or Briggs. Currently, the Abuhouran litigation is ongoing in the State of New Jersey. Because Mr. Abuhouran's state court matter has not been resolved, it has not yet been established whether Mr. Abuhouran has actually been injured, and if so, by whose negligence, if anyone's. Accordingly, there is an insufficient record on which this Court can determine whether N.C. Gen. Stat. § 22B-1 bars KaiserKane's claim. For these reasons, this matter must be stayed pending the entry of a final judgment in Mr. Abuhouran's New Jersey action.

## **CONCLUSION**

In sum, the Court concludes as a matter of law that the parties' contract contains no duty requiring NARS to defend KaiserKane against the claims made by Mr. Abuhouran in his New Jersey action. The parties' agreement

does, however, provide KaiserKane the right of indemnity under certain circumstances as outlined herein. Since the presence of such circumstances cannot be determined until after a final judgment is entered in the New Jersey litigation, this matter will be stayed pending the entry of such judgment.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that the summary judgment motions filed by both the Defendant North American Roofing Services, Inc. ("NARS") [Doc. 20] and the Plaintiff KaiserKane, Inc. [Doc. 22] are hereby **GRANTED IN PART AND DENIED IN PART** as more fully explained herein;

**IT IS FURTHER ORDERED AND DECLARED** that the parties' contract: (1) contains no duty requiring NARS to defend KaiserKane against the claims made by Mr. Abuhouran in his New Jersey action; and (2) provides KaiserKane the right to be indemnified by NARS with regard to the Abuhouran litigation for any claim therein that is based on KaiserKane being derivatively liable for any wrongdoing on the part of NARS or Briggs.

**FINALLY IT IS ORDERED** that this matter is **STAYED** pending entry of final judgment in Mr. Abuhouran's New Jersey state court action. The

parties shall jointly file reports with the Court every six months following the entry of this Order advising the Court of the status of such action.

**IT IS SO ORDERED.**

Signed: January 13, 2017

Martin Reidinger
United States District Judge